UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARC BOWMAN BROWN,                      :
                                        :
                  Plaintiff,            :
                                        :
          v.                            :        Civil Action No. 11-0526 (EGS)
                                        :
TOM J. VILSACK, Secretary,              :
U.S. Department of Agriculture,         :
                                        :
                  Defendant.            :

MEMORANDUM OPINION

     This matter is before the Court on Defendant's Motion for Summary Judgment on

Plaintiff's Remaining Claim for Wrongful Termination [ECF No. 48].[1]  For the reasons

discussed below, defendant's motion will be granted.

I.  BACKGROUND

     Plaintiff was employed by the United States Department of Agriculture ("USDA") as a

Management Analyst in the Information Technology Policy and Capital Planning Division

("ITPCPD"), Office of Program Evaluation, Enforcement and Review ("OPEER"), Food Safety

and Inspection Service ("FSIS"), *see* Complaint ("Compl."), Ex. 9 (Initial Decision, Docket No.

DC-0752-09-0726-I-1, dated June 28, 2010) at 1, from July 2003 until his termination on July

24, 2009, *see* Plaintiff's Motion in Opposition to Defendant[']s August 13, 2012 Motion for

Summary Judgment ("Pl.'s Opp'n"), Ex. 1A (Brown Aff.) at 46-47 [ECF No. 52-1 at 5-6].[2]

---

[1]   Plaintiff's Motion for Leave to Amend Original Complaint [ECF No. 53] will be denied.
[2]   The pages of the exhibits to plaintiff's complaint [ECF No. 1] and his opposition [ECF

*A.  Leave Restriction*

Based on plaintiff's use of unscheduled leave, which within the first months of 2008

totaled 8 hours annual leave, 24 hours sick leave, and 75 hours of leave without pay, Marcelo

Olascoaga, plaintiff's supervisor, imposed a leave restriction.  *See* Pl.'s Opp'n, Ex. 7

(Memorandum to plaintiff from Marcelo Olascoaga, Director, ITPCPD, OPEER, dated April 29,

2008, regarding Leave Restriction Notice) at 1 [ECF No. 52-10 at 32].  For a period of six

months, plaintiff was to comply with the following terms:

> (1)   Annual leave will not be granted, except in emergency situations, unless <u>scheduled in advance</u> and approved by [the supervisor].  Annual leave should be requested at least as far in advance as the amount of leave requested . . . .  Annual leave for emergency purposes will not be granted unless, upon your return to work, you furnish proof that an emergency occurred which prevented you from returning to work during the entire period of your absence.  If leave is taken without prior approval, you will be considered absent without leave (AWOL).  Excessive use of AWOL status can become grounds for disciplinary action.

> (2)  Sick leave will be granted <u>only</u> if you provide an acceptable medical certificate <u>for each absence</u>, either for yourself or a family member.   This   certificate   should   provide   the   following information: (1) the date or dates examined by a physician, (2) the physician's diagnosis, (3) the physician's certification that you were unable to perform your duties for medical reasons on the dates covered by the certificate, (4) the name, address, and telephone number of the physician, and (5) the physician's signature.

> (4)  In case of emergency, you must call [the supervisor or his designee].  If you are unable to reach either [person], you must send an email to both [persons] explaining the emergency that is preventing you from being at work and you must speak with [either the supervisor or the designee] as soon as possible.  Under no   circumstances   will   merely   leaving   a   voice   message   be

---

No. 52] to defendant's motion for summary judgment are not numbered sequentially.  These and the documents in the Agency File [ECF No. 50] are a challenge to navigate.  For convenience, the Court sets forth in brackets the docket and page numbers designated by ECF for the parties' exhibits.

>  acceptable.   Documentation described under #1 and #2 must be
>  provided to [the supervisor] when [he is] in the office.
>
>  (5)   Arriving to work late without a proper excuse, leaving work
>  prior to the end of a workday, or being absent from your
>  assignment for extended periods of time is unacceptable and will
>  be charged as AWOL.

*Id.*, Ex. 7 (Leave Restriction Notice) at 2 [ECF No. 52-10 at 33] (emphasis in original).   The

Notice also informed plaintiff that "check[ing] the box on the SF-71, Leave form . . . stat[ing]

that [he is] invoking [his] right to . . . leave" under the Family Medical Leave Act ("FMLA")

was ineffective because he had "never provided adequate medical documentation that a serious

health condition exist[ed] for either [him]self or [his] children."  *Id.*  Mr. Olascoaga instructed

plaintiff that, "if [he] wish[ed] to be approved for leave usage as outlined under the FMLA," he

was expected to return a form completed by his physician within 15 days.  *Id.*

### B.  Five-Day Suspension

On June 24, 2008, plaintiff was issued a Notice of Proposed Suspension for improper

conduct and unsatisfactory attendance.  Notice of Filing Agency Record in Support of

Defendant's Motion for Summary Judgment on Plaintiff's Remaining Claim of Wrongful

Termination, Ex. ("Agency File"), Tab 4ee (Memorandum to plaintiff from Quentin Barrett,

Human Resources Specialist, Employee Relations Branch, dated June 24, 2008, regarding Notice

of Proposed Suspension) at 1 [ECF No. 50-5 at 55].  Plaintiff was charged with improper

conduct for failing to comply with the terms of the leave restriction.  On Friday, May 2, 2008,

plaintiff failed to contact Mr. Olascoaga by telephone before the start of the work day to inform

him of his late arrival.  *Id.*, Tab 4ee at 1 [ECF No. 50-5 at 55] (Specification 1).  On Wednesday,

May 14, 2008, plaintiff left work before the end of his tour of duty, and on May 15, 2008,

plaintiff was absent.  *Id.*, Tab 4ee at 2 [ECF No. 50-5 at 56] (Specification 2).  Upon plaintiff's

return to work, he "failed to furnish acceptable medical documentation or proof that an

emergency occurred" which prevented him from reporting to work.  *Id.*, Tab 4ee at 2 [ECF No. 50-5 at 56] (Specification 3).  Additionally, plaintiff was absent from work from Tuesday, June 3, 2008, through Thursday, June 5, 2008, without having contacted his supervisor by telephone, and without having produced acceptable medical documentation upon his return to work on Friday, June 6, 2008.  *Id.,* Tab 4ee at 3 [ECF No. 50-5 at 57-58] (Specifications 4-6).

The charges of unsatisfactory attendance correspond to the dates on which plaintiff arrived at work one hour late (Specification 1), left work early (Specification 2), and did not report to work at all (Specifications 3-6).  *Id.*, Tab 4ee at 4-5 [ECF No. 50-5 at 58-59].  All the specifications were sustained, and plaintiff was suspended for five days without pay.  *Id.*, Tab 4aa (Memorandum to plaintiff from Dawn R. Ruffner, Chief, Employee Relations Branch, dated September 3, 2008, regarding Decision on Notice of Proposed Suspension) at 6 [ECF No. 50-5 at 51].

### C.  *Fourteen-Day Suspension*

Plaintiff's subsequent conduct prompted a second suspension.  On each of three days, from Tuesday, September 23, 2008 through Thursday, September 24, 2008, plaintiff contacted Mr. Olascoaga by email to advise him of his illness and inability to report to work, yet plaintiff failed to supply medical documentation upon his return as the leave restriction required.  *Id.*, Tab 4x (Memorandum to plaintiff from Quentin Barrett dated December 4, 2008 regarding Notice of Proposed Suspension) at 1-2 [ECF No. 50-6 at 5-6] (Specifications 1-3).  Similarly, on six occasions, plaintiff contacted Mr. Olascoaga by email to advise of his absence from work due to his daughter's illness, *id.*, Tab 4ee at 2-4 [ECF No. 50-6 at 6-8] (Specifications 4-8 and 10), and on a seventh occasion to advise of his absence to care for his son, *id.*, Tab 4ee at 4-5 [ECF No. 50-6 at 8-9] (Specification 9).  Not once did plaintiff provide acceptable medical documentation

or proof that an emergency had occurred on these ten dates, and, thus, plaintiff failed to follow

the instructions set forth in the leave restriction.  *See generally id.*, Tab 4ee at 2-5 [ECF No. 50-6

at 6-9].  The charges of unsatisfactory attendance correspond to the dates on which plaintiff

failed to report to work.  *See id.*, Tab 4ee at 5 [ECF No. 50-6 at 10] (Specifications 1-4).

Because plaintiff had not provided supporting documentation upon his return to work, he was

placed on AWOL status.  All the specifications were sustained, and plaintiff was suspended for

14 days without pay.  *Id.*, Tab 4t (Memorandum to plaintiff from Dawn R. Ruffner dated January

27, 2009, regarding Decision on Notice of Suspension) at 6 [ECF No. 50-3 at 37].

Plaintiff's attendance problems persisted.  The leave restriction was extended indefinitely

when, between February and April 2009, plaintiff had been "absent from work for 88 hours in

violation of the conditions of [the] leave restriction."  *Id.*, Tab 4ff (Memorandum to plaintiff

from Matthew Michael, Acting Director, ITPCPD, OPEER, USDA, dated April 29, 2009) at 1

[ECF No. 50-5 at 43].

### D.  Removal from Federal Service

Defendant proposed plaintiff's removal based on the same charges – improper conduct

and unsatisfactory attendance – that gave rise to the two suspensions.  *See generally id.*, Tab 4h

(Memorandum to plaintiff from Quentin Barrett dated June 4, 2009 regarding Notice of Proposed

Removal) [ECF No. 50-2 at 7-14].  Plaintiff emailed his superiors to request sick leave on five

occasions in February, March and April 2009, yet failed to provide appropriate medical

documentation upon his return to work.  *Id.*, Tab 4h at 1-2 [ECF No. 50-2 at 7-9] (Specifications

1-2, 4-6).  On another occasion, plaintiff neither reported for duty, nor requested leave in

advance, nor provided documentation of an emergency.  *Id.*, Tab 4h at 2-3 [ECF No. 50-2 at 8-9]

(Specification 3).  Each occasion comprised a failure to follow directions, *see generally id.*, Tab

4h at 1-3 [ECF No. 50-2 at 7-9], as well as a corresponding specification of unsatisfactory

attendance, *see id.*, Tab 4h at 3-4 [ECF No. 50-2 at 9-10] (Specifications 1-6).  The notice

informed plaintiff of his right to respond orally or in writing or both.  *Id.*, Tab 4h at 6-7 [ECF No.

50-2 at 12-13].  Plaintiff opted to respond orally and requested an oral conference, *id.*, Tab 4g

(email from plaintiff to Dawn Ruffner dated June 17, 2009) [ECF No. 50-2 at 5], which occurred

on June 26, 2009, with Sandra Pearlman, the Oral Conference Officer assigned to the case, *id.*,

Tab 4f (Oral Conference Report dated July 1, 2009) at 1[ECF No. 50-2 at 1].  Ms. Pearlman's

conference report summarized plaintiff's responses as follows:

> Mr. Brown responds that during the past two years, [USDA] has
> taken a number of illegal, prohibited, discriminatory, retaliatory,
> and adverse personnel actions against him and others.  He states
> that, in 2004, he provided Deidre McNeil, whom he identified as
> FSIS' FMLA representative, with medical documentation to
> support his need to use FMLA leave to care for his children and to
> attend to his own medical needs.  He said that she sent him a letter
> saying it was not necessary for him to send in any additional
> medical information in order to use FMLA leave; however, Mr.
> Brown has not submitted a copy of that letter . . . .
>
> Mr. Brown confirmed that he did not submit medical
> documentation for any of the absences in the specifications as
> required by the terms of the sick leave restriction.
>
> Mr. Brown said that his supervisors know that his children have
> chronic asthma and that he has personal health problems that
> require him to be absent from work.  He said he calls or sends e-
> mails to his supervisors to notify them of his absences.  He said
> [he] has provided his supervisors medical documentation that
> substantiate[s] that he and his children have chronic illnesses and
> he does not agree that he should be required to bring acceptable
> medical documentation every time he does not report to duty due
> to his own or his children's illnesses . . . .
>
> He said Dawn Ruffner has an ax to grind with him.  He also said
> that he is being retaliated against because he "blew the whistle" on
> an associate Administrator's wife.  Mr. Brown added that for the
> last 12 months he has had nothing to do; that the [USDA] has not
> given him anything to do.

> Mr. Brown says that the denial of FMLA use is illegal because he
> qualifies for it and he has been qualified since 2004.

*Id.*, Tab 4f at 2 [ECF No. 50-2 at s] (emphasis added).

Plaintiff later submitted a written response in the form of an email message to Ms.

Pearlman. *See generally id.*, Tab 4c (email to Sandra Pearlman from plaintiff dated June 30,

2009) [ECF No. 50-1 at 47-54]. Plaintiff maintained that he had been subjected to "a number of

illegal, prohibited, discriminatory, retaliatory, and adverse personnel actions" over the preceding

two years. *Id.*, Tab 4c (email) at 1 [ECF No. 50-1 at 47]. He listed the alleged adverse personnel

actions as a (1) reassignment, (2) denial of FMLA leave, (3) denial of reasonable

accommodation, (4) leave restriction, (5) five- and fourteen-day suspensions, and (6) proposed

removal. *Id.*, Tab 4c (email) at 2 [ECF No. 50-1 at 48]. Further, he maintained that he had been

entitled to use leave without pay under FMLA since 2004, and that his use of FMLA leave "was

consistently approved for three years." *Id.*, Tab 4c (email) at 1 [ECF No. 50-1 at 47]. According

to plaintiff, there were "ulterior motives" for these events because he had filed a charge of

discrimination with the EEOC, and he believed that he was "being harassed and financially

damaged." *Id.*, Tab 4c (Decision on Notice of Proposed Removal) at 4 [ECF No. 50-1 at 44].

Plaintiff's responses notwithstanding, Ms. Pearlman found "that the preponderance of the

evidence supports the specifications," particularly in light of plaintiff's confirmation "that he did

not provide acceptable medical documentation for any [of] the absences enumerated in the

specifications." *Id.*, Tab 4f at 3 [ECF No. 50-2 at 3]. She found that plaintiff failed to follow

instructions by not providing acceptable medical documentation as required by the leave

restriction and that he properly had been declared AWOL for his absences. *Id*.

At no time, however, did plaintiff provide a copy of the letter from Ms. McNeil to support his position that he was not required to submit additional medical information in order to use leave under the FMLA, or any other evidence to support his contention that his FMLA leave request had been approved, or any evidence to rebut the agency's showing.  Agency File, Tab 4c (Memorandum to plaintiff from Dawn Ruffner dated July 24, 2009 regarding Decision on Notice of Proposed Removal) at 4 [ECF No. 50-1 at 42].  All the specifications were sustained, and plaintiff was terminated effective July 24, 2009.  *Id*., Tab 4c at 5-6 [ECF No. 50-1 at 43-44].

In reaching the decision to remove plaintiff, several factors were taken into consideration. Ms. Ruffner noted:

> I considered the nature and seriousness of the offense.  Clearly your misconduct is of a serious nature.  There is an inherent relationship between absences and the efficiency of the service and since an essential element of employment is to be on the job when you are to be there, it is imperative that you are reliable with regards to showing up for work.  Your absences continue to impede the function of the Agency and impose additional burdens on other employees.
>
> In addition, failure to comply with your supervisor's instructions undermines his authority.  This can damage morale and impair the efficiency of the service as you make it more difficult for your supervisor to carry out his duties.  In spite of prior warnings and written instructions, you have repeatedly failed to comply with the terms of the leave restriction letters and leave procedures.  Your failure to comply with the leave restriction letter makes it apparent that you are unwilling to correct your behavior despite the seriousness of your misconduct.

*Id.*, Tab 4c (Decision on Notice of Proposed Removal) at 5 [ECF No. 50-1 at 43].  The length of plaintiff's federal service was a mitigating factor, but not one to outweigh the aggravating factors, namely the two suspensions; that plaintiff "did not acknowledge any responsibility, wrongdoing, or level of remorse in this matter," caused Ms. Ruffner to "doubt [plaintiff's]

potential for rehabilitation."   *Id.,* Tab 4c (Decision on Notice of Proposed Removal) at 5 [ECF

No. 50-1 at 43].

## E.  Appeal to the MSPB

On July 27, 2009, plaintiff filed an appeal of his termination to the Merit Systems

Protection Board ("MSPB"), Washington Regional Office.  *See* Compl., Ex. 9 (Initial Decision

dated June 28, 2010) at 1 [ECF No. 1-1 at 49].  After a hearing, the administrative law judge

("ALJ") affirmed the USDA's action, finding that "the penalty of removal was warranted[; it]

was neither arbitrary, capricious, nor unreasonable."  *Id.*, Ex. 9 at 27 [ECF No. 1-1 at 75].

Plaintiff filed a petition for review of the ALJ's Initial Decision by the full MSPB on June 29,

2010.  *See* Plaintiff's Response to Defendant's Motion for Partial Partial Dismissal and Plainti'f's

Motion to Proceed, Ex. B (Letter to plaintiff from Philip Miller, Paralegal Specialist, Office of

the Clerk of the Board, U.S. Merit Systems Protection Board, dated June 30, 2010) [ECF No. 27-

2].  The full MSPB denied plaintiff's petition for review, *see id.*, Ex. C (Final Order, Docket No.

DC-0752-09-0726-I-1, U.S. Merit Systems Protection Board, dated September 30, 2010) [ECF

No. 27-3 at 1-6], and plaintiff filed an appeal of its Final Order to the Equal Employment

Opportunity Commission ("EEOC"), Office of Federal Operations, *id.*, Ex. D (Decision, Petition

No. 0320110003, dated December 23, 2010) [ECF No. 27-4 at 3-8].  The EEOC found "that the

Agency articulated legitimate, nondiscriminatory reasons for the removal action, namely

[plaintiff's] improper conduct and unsatisfactory attendance."  *Id.*, Ex. D at 4 [ECF No. 27-4 at

6].  The EEOC notified plaintiff of his right to file a civil action in federal district court, *see id.*,

Ex. D at 4 [ECF No. 27-4 at 6], and plaintiff timely filed this action on January 19, 2011.[3]

---

[3]        The Clerk of Court received plaintiff's complaint and application to proceed *in forma*

## II.  DISCUSSION

The Secretary of Agriculture moves for summary judgment, arguing the absence of any genuine factual issue in dispute regarding plaintiff's termination and his entitlement to judgment as a matter of law.

### A.  *Judicial Review of MSPB Decision*

Although an appeal of a decision of the MSPB ordinarily would be filed with the United States Court of Appeals for the Federal Circuit, 5 U.S.C. § 7703(b)(1), because plaintiff included discrimination claims in his complaint, he may seek review in district court.  5 U.S.C. § 7703(b)(2) and (c); *see Vickers v. Powell*, 493 F.3d 186, 192 (D.C. Cir. 2007) ("'[M]ixed cases' that involve both MSPB appeals and discrimination claims under Title VII . . . are reviewed in federal district court."); *Barnes v. Small,* 840 F.2d 972, 979 (D.C. Cir. 1988); *Williams v. Dep't of Army,* 715 F.2d 1485 (Fed. Cir. 1983) (en banc) (holding that "employee [who] is challenging judicially the [MSPB's] determinations of both the discrimination and the nondiscrimination issues" seeks review in a federal district court, not the Federal Circuit).  Plaintiff's claims based on whistleblowing, disability discrimination and reprisal have been dismissed, *see Brown v. Vilsack*, 866 F. Supp. 2d 23, 28 (D.D.C. 2012), leaving a single non-discrimination claim – judicial review of the MSPB's decision upholding his removal from federal service.

"[D]istrict courts review appeals of MSPB decisions on the administrative record, holding unlawful and setting aside any agency action, findings, or conclusions found to be '(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2)

---

*pauperis* on January 19, 2011.  The IFP application was denied on February 4, 2011.  Plaintiff filed a motion to reconsider and the motion was granted on March 9, 2011.  His complaint and IFP application were placed on the docket on March 14, 2011.  The Court deems the complaint received upon its receipt by the Clerk of Court on January 19, 2011.

obtained without procedures required by law, rule, or regulation having been followed; or (3)

unsupported by substantial evidence.'"  *White v. Tapella*, 876 F. Supp. 2d 58, 65 (D.D.C. 2012)

(quoting 5 U.S.C. § 7703(c)); *see Barnes,* 840 F.3d at  979 ("[I]n its consideration of the joined

nondiscrimination claims, on appeal from the MSPB's determination, the district court may set

aside the administrative adjudication only if it is arbitrary or capricious, obtained without

compliance with lawful procedures, unsupported by substantial evidence or otherwise not in

accordance with law.").  "To show that the MSPB's decision is not arbitrary and capricious,

defendant needs only to show that the decision has 'a rational basis in the law.'"  *Hanna v.

Herman*, 121 F. Supp. 2d 113, 121 (D.D.C. 2000) (quoting *Wilder v. Prokop,* 846 F.2d 613, 620

(10th Cir. 1988)).

An agency must demonstrate by a preponderance of the evidence that removal of an

employee was justified in order to promote the efficiency of the agency.  *See* 5 U.S.C. §§

7513(a) (authorizing agency to "take an action . . . against an employee only for such cause as

will promote the efficiency of the service"), 7701(c)(1)(B) (providing that "the decision of the

agency shall be sustained . . . only if the agency's decision . . . is supported by a preponderance

of the evidence").  It is plaintiff's obligation to establish a reversible error in the MSPB's

decision. *See Fernandez v. Dep't of the Army*, 234 F.3d 445, 555 (Fed. Cir. 2000).

### B.  Charges of Improper Conduct and Unsatisfactory Attendance

Noting first the leave restriction and plaintiff's five-day and fourteen-day suspensions,

*see* Compl., Ex. 9 (Initial Decision) at 2-3 [ECF No. 1-1 at 50-51], the MSPB hearing examiner

summarized the six instances on which plaintiff neither reported for duty as scheduled nor

requested leave under the terms set forth in the leave restriction, *id.* at 5 [ECF No. 1-1 at 53].

The hearing examiner also heard testimony from plaintiff's supervisors, all of whom described

plaintiff's repeated failures to comply with the leave restriction and his unsatisfactory

attendance.  S*ee id*, Ex. 9*.* at 6-9 [ECF No. 1-1 at 54-57].  Shirley Knight, one of plaintiff's

former supervisors, testified that, as early as 2005, plaintiff had "'quite a bit' of attendance

problems," of such severity that she "counseled [him] and informed him that his absences were

becoming problematic and were having a deleterious effect on his performance."  *Id.*, Ex. 9 at 6

[ECF No. 1-1 at 54].  Plaintiff's response was described as "hostile."  *Id.*, Ex. 9 at 6 [ECF No. 1-

1 at 54]

Marcelo Olascoaga, who became plaintiff's supervisor in 2007, described plaintiff's

attendance as "sporadic," *id.*, Ex. 9 at 8 [ECF No. 1-1 at 56].  Because of plaintiff's "frequent use

of unscheduled leave," Mr. Olascoaga placed plaintiff on leave restriction, upon delivery of

which plaintiff became "upset, raised his voice, and . . . got into an argument" with Mr.

Olascoaga.  *Id.*, Ex. 9 at 8 [ECF No. 1-1 at 56].  Notwithstanding the leave restriction, plaintiff

"still did not follow the directions contained" therein.  *Id.*  Plaintiff's noncompliance prompted

Mr. Olascoaga to suspend plaintiff.  *Id.*, Ex. 9 at 8 [ECF No. 1-1 at 56].

Matthew Michael succeeded Mr. Olascoaga as plaintiff's supervisor, and because

plaintiff "continued to have problems with his attendance and with failing to meet the terms of

his leave restriction," Mr. Michael "decided to continue and indefinitely extend the . . . leave

restriction."  *Id.*, Ex. 9 at 8 [ECF No. 1-1 at 56].  Mr. Michael testified that, on five occasions

during the relevant time period when plaintiff "provided medical documentation to substantiate

treatment of his stomach problems, or information concerning his daughter's hospitalization,"

Mr. Michael granted either annual leave or sick leave.  *Id.*, Ex. 9 at 9 [ECF No. 1-1 at 57].

However, he denied "every other leave request" for plaintiff's non-compliance where, for

example, plaintiff "informed him via email, or in person, that he was suffering from stomach

problems, but this was not what the leave restriction letter advised [him] to do when asking for leave." *Id.*, Ex. 9 at 9 [ECF No. 1-1 at 57].

The hearing examiner summarized plaintiff's testimony as follows:

> [Plaintiff] acknowledged that he was absent on the dates identified in the notice of proposed removal. However, he disagreed that he failed to comply with the terms of the leave restriction letter or with his supervisors' instructions. He said he followed the leave restriction letter's procedures whenever there were "emergencies." He stated that, if he had stomach pains, he considered that to be an emergency, and so he could not make it to a doctor's office or to a hospital because of the severity of the pain. He said that, if he experienced an emergency, he called and sent an email to his supervisor prior to the start of his tour of duty.

*Id.*, Ex. 9 at 9 [ECF No. 1-1 at 57]. Acknowledging the conflicting testimony, the hearing examiner next considered the credibility of the witnesses, and "found the testimonies of Knight, Olascoaga, and Michael declaring that [plaintiff] did not abide by the terms of the leave restriction letter, and that he failed to follow supervisory instructions, more credible than [plaintiff's] testimony to the contrary." *Id.*, Ex. 9 at 10 [ECF No. 1-1 at 58]. Plaintiff "offered no evidence in support of his bare assertion that he complied with the leave restriction letter," and his emails to supervisors "fell short of what was required of him under the terms of the leave restriction letter." *Id.*, Ex. 9 at 10 [ECF No. 1-1 at 58]. For example, plaintiff neither "furnish[ed] any medical documentation" to support his absences nor requested annual leave in advance as the leave restriction specified. *Id.*, Ex. 9 at 10 [ECF No. 1-1 at 58]. Accordingly, the hearing examiner sustained the charges of improper conduct.

With respect to the second charge, unsatisfactory attendance, the hearing examiner reviewed time and attendance records "reflecting that [plaintiff] was charged AWOL for the six different time periods listed in the proposal letter," as well as written summaries of telephone

conversations and email communications between plaintiff and his supervisors.  *Id*., Ex. 9 at 11

[ECF No. 1-1 at 59].  The records indicated that, "when [plaintiff] provided medical certificates

verifying his absences on the dates in question, the agency documented his absences as annual or

sick leave, but when he did not supply medical certification . . . the agency charged him as being

AWOL."  *Id.*, Ex. 9 at 11-12 [ECF No. 1-1 at 59-60].  Plaintiff did not deny his absences on the

dates in question, and he failed to rebut the agency's evidence of his undocumented absences.

*Id.*, Ex. 9 at 12 [ECF No. 1-1 at 60].  Nor did plaintiff demonstrate that his supervisors "abused

their discretion in denying his requests for annual leave, advanced annual or sick leave, or

LWOP."  *Id.*, Ex. 9 at 12 [ECF No. 1-1 at 60].

The hearing examiner considered plaintiff's assertion that he should have been granted

"leave under FMLA to allow him to care for his children[] and to care for his own medical

needs."  *Id.* Ex. 9 at 13 [ECF No. 1-1 at 61].  Plaintiff claimed to "suffer[] from ulcers, allergies,

and asthma."  *Id.*  However, it was not clear from the record before the MSPB that plaintiff "was

suffering from a serious health condition at the time in question[] which made him unable to

perform" his duties.  *Id.*  The hearing examiner found that plaintiff was ineligible for FMLA

leave:

> First, [plaintiff's] absences listed under this charge have not been
> shown to have involved inpatient care for himself or his children . .
> . .
>
> Second, [plaintiff] failed to submit acceptable medical evidence to
> support a request for leave under FMLA.  The agency, through
> several witnesses, provided plausible, convincing testimony that
> [plaintiff] received repeated guidance about what he was required
> to furnish to support his request for FMLA leave, but he failed to
> submit timely medical certification of a serious medical condition
> (for him or his children) as directed . . . .
>
> Third, [the applicable FMLA regulations] provide[s] that an
> employee must invoke his entitlement to family and medical leave

> subject to . . . notification requirements . . . , and that an employee
> may not retroactively invoke his entitlement to family and medical
> leave unless he is physically or mentally incapable of invoking his
> entitlement during the entire period in which he is absent from
> work for a FMLA-qualifying purpose.    Here, [the hearing
> examiner found] the evidence . . . clear that [plaintiff] did not
> invoke his entitlement to FMLA leave in advance.   Nor [did he]
> find that [plaintiff] was physically or mentally incapable of
> invoking his entitlement to FMLA leave during the period of time
> in which he was absent.

*Id.*, Ex. 9 at 14-15 [ECF No. 1-1 at 62-63].  The hearing examiner thus concluded that the

agency's actions did not violate FMLA and that plaintiff "must bear the responsibility for his

failure to follow instructions regarding requesting leave under FMLA."  *Id.*, Ex. 9 at 15-16

[ECF No. 1-1 at 63-64].  The agency properly charged plaintiff as AWOL.  *Id.*, Ex. 9 at 16

[ECF No. 1-1 at 64].   Lastly, the hearing examiner considered and rejected plaintiff's

assertions that the agency discriminated against him because of his disabilities, *id.*, and that his

removal was an act of reprisal, *id.*, Ex. 9 at 19 [ECF No. 1-1 at 67], and that his removal was

done in retaliation for whistleblowing activities.  *See generally id.*, Ex. 9 at 16-24 [ECF No. 1-

1 at 64-72].

    The hearing examiner found that the agency established a nexus between the charges and

plaintiff's ability to perform duties satisfactorily, such that disciplinary action was warranted.

*Id.*, Ex. 9 at 24-25[ECF No. 1-1 at 72-73].  He found "no basis to disturb the agency's chosen

penalty" in light of the seriousness of plaintiff's conduct and its deleterious effect on the

efficiency of agency operations.  *Id.*, Ex. 9 at 27 [ECF No. 1-1 at 75].

### C.  The MSPB's Decision Will Be Affirmed

    Plaintiff's opposition to defendant's motion begins with the erroneous assumption that

defendant's "primary focus . . . is the medical issues of the Plaintiff, and the Plaintiff's family."

Plaintiff's Motion in Opposition to Defendant[']s August 13, 2012 Motion for Summary

Judg[]ment [ECF No. 55] ("Pl.'s Opp'n") at 3.[4]  He discusses the medical conditions of his wife,

his children, and himself, as well as the treatments received, *see id.* at 3-5, along with dozens

documents related to their various diagnoses, hospital admissions, and prescriptions, among

other things, *see generally id.*, Ex. 3-A & 3-B (Medical Documentation).  Plaintiff proceeds as if

the family's recurring maladies relieve him of his obligation under the leave restriction to request

leave in advance or, in case of illness or emergency, to submit documentation upon his return to

duty.

Further, plaintiff erroneously believes that attributing his use of leave to his and his

family members' recurring health issues, *see, e.g., id.*, Ex. 7 (email to Marcelo Olascoaga and

Peggy Nunnery from plaintiff dated April 17, 2008 regarding plaintiff's "occasional[] need to

use leave without pay due to continuing personal health issues, and the care of [his] children,

when no alternative child care available" ), amounts to the invocation of FMLA.

Notwithstanding the leave restriction's clear instructions with respect to an application for

FMLA leave, nothing in the record suggests that plaintiff supplied proper documentation of a

serious health condition or that he otherwise demonstrated his entitlement to FMLA leave

Plaintiff's only discussion of the leave restriction occurs when he raises objections to it.

He "believes that the 'Leave Restriction' amounts to a unilateral illegal contract, unenforceable,

and therefore unable to serve as the basis for the Defendant to punish the Plaintiff further."  Pl.'s

Opp'n at 5.  In his view, a restriction of unlimited duration, which requires "prior notification

and approval for any and all emergencies . . . create[s] an impossible condition" which

"guarantee[s] non compliance by the Plaintiff."  *Id.* (emphasis removed).  His termination, he

---

[4]      Plaintiff apparently neglected to sign his opposition [ECF No. 52], and subsequently
submitted a signed copy [ECF No. 55] on September 15, 2012.

claims, is the result of "not meeting an absurd and impossible requirement." *Id.* Inexplicably, plaintiff misconstrues the terms of the leave restriction. The leave restriction anticipates that emergencies may arise, and in such circumstances, plaintiff was instructed to contact his supervisor before his work day began to explain the emergency. The leave restriction does not presume that plaintiff can predict an emergency in order that he request leave in advance.

In short, plaintiff utterly fails to rebut defendant's showing that his removal from federal service was justified in order to promote the efficiency of the agency, or to demonstrate reversible error in the MSPB's decision affirming plaintiff's removal on charges of improper conduct and unsatisfactory attendance.

### III.   CONCLUSION

On review of the record of this case, the Court concludes that the MSPB decision is neither arbitrary, capricious, nor an abuse of discretion. It is in accordance with applicable law and regulations, and it is well supported by substantial evidence. Accordingly, defendant's motion for summary judgment will be granted. An Order accompanies this Memorandum Opinion.

Signed:      EMMET G. SULLIVAN
               United States District Judge

Dated:      February 11, 2013